IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RICKY LEE CLAYTON                                                                    PLAINTIFF

V.                                      NO. 12-2013

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration                    DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Ricky Lee Clayton, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff protectively filed his applications for DIB and SSI on March 2, 2010, alleging an inability to work since January 22, 2010, due to issues relating to his back, neck, pain in his arms, and a learning disability. (Tr. 146-147, 180). An administrative hearing was held on May 3, 2011, at which Plaintiff appeared with counsel, and he and his mother testified. (Tr. 24-55).

By written decision dated May 16, 2011, the ALJ found that Plaintiff had the following

severe impairment - degenerative disk disease of the lumbar spine. (Tr. 13). However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found that Plaintiff had the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can only occasionally climb, balance, crawl, kneel, stoop, and crouch. Furthermore, due to pain and fatigue, the claimant is limited to work where interpersonal contact is incidental to the work performed; where the complexity of tasks is learned and performed by rote, with few variables and little judgment required, and where supervision required is simple, direct, and concrete.

(Tr. 14). With the help of a vocational expert (VE), the ALJ determined that Plaintiff was unable to perform his past relevant work, but that there were other jobs Plaintiff could perform, such as: machine operator or tender; assembly/production worker; and escort vehicle driver. (Tr. 18-19). Plaintiff then requested a review of the hearing decision by the Appeals Council, which considered additional evidence, and denied that request on November 16, 2011. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 4, 5).

**II.   Evidence Presented:**

Plaintiff was born in 1966, completed high school while taking special education classes, and injured his back in 1998, while he was working in construction. (Tr. 31-32, 146, 181). Plaintiff testified that since then, his back has become worse. (Tr. 32).

As early as 1999, Plaintiff appeared at St. Edward Mercy Medical Center. (Tr. 235-252). The impression at that time was low back pain and disc bulge at L4-5, L5-S1. (Tr. 236). A CT

scan of the lumbar spine revealed moderate central and left paracentral disc protrusion at L5-S1, and small central disk protrusion at L4-5. (Tr. 241). The discharge diagnoses was: urticaria,[1] etiology uncertain; 2) febrile[2] illness; and 3) back pain. (Tr. 252).

On May 13, 2006, Plaintiff presented himself to St. Edward Mercy Medical Center, complaining of back pain, and an MRI of his lumbar spine was performed on May 17, 2006. (Tr. 230). The impression was:

> 1. Small to moderate-sized central disc protrusion L4-5 with mild to moderate spinal canal stenosis
> 2. Small right paracentral disc protrusion L5-S1 with probable mild effect upon the passing right S1 nerve root.

(Tr. 230). On June 13, 2006, Plaintiff was again seen at St. Edward Mercy Medical Center and was given a provisional diagnosis of back pain. (Tr. 288).

On January 8, 2008, Plaintiff presented himself to Roland Family Medical Center, complaining of lower back pain. He was assessed as having moderate spinal stenosis and radiculopathy "RLE." (Tr. 231). On May 16, 2008, Plaintiff again presented himself to Roland Family Medical Center, complaining of back and leg pain, and dragging a leg. (Tr. 213). He was assessed with moderate canal stenosis and radiculopathy "RLE." (Tr. 213).

On July 16, 2008, a General Physical Examination was conducted by Dr. Stephanie Frisbie, for the Social Security Administration, and it was noted that an MRI two years previously showed mild-moderate spinal canal stenosis. (Tr. 215). Dr. Frisbie reported strength of 5/5 in both upper and lower extremities, no muscle atrophy, and a steady gait. (Tr. 216).

---

[1] Urticaria - An eruption of itching wheals, collquially called hives, usually of systemic origin; it may be due to a state of hypersensitivity to foods or drugs, foci of infection, physical agents (heat, cold, light, friction), or psychic stimuli. Stedman's Medical Dictionary 2077 (28th ed. 2006).

[2] Febrile - Denoting or relating to fever. Id. at 709.

Plaintiff was able to do everything with limb function, and had all normal range of motion in his extremities. (Tr. 216-217). The only thing noted was paralumbar tenderness in his lumbar spine. (Tr. 217). Dr. Frisbie diagnosed Plaintiff with chronic low back pain, and based upon the physical exam, concluded that Plaintiff had "mild-moderate lifting and excessive bending limitations." (Tr. 218). X-rays of Plaintiff's lumbar spine taken on July 21, 2008, revealed mild degenerative change of the posterior elements at L5-S1. (Tr. 214).

On July 24, 2008, Plaintiff presented himself to Dr. Terry Brackman, D.O. (Tr. 219). Dr. Brackman reported that she first saw Plaintiff on June 22, 2008. Dr. Brackman noted that Plaintiff had herniated discs which pressed against the S1 nerve root on the right, and that he had protrusion of L5-S1 and sacroiliac region. (Tr. 219). Dr. Brackman also noted that at times, Plaintiff drug his right lower extremity, secondary to his low back pain. (Tr. 219). The impression given by Dr. Brackman was:

> 1. He has chronic pain on the right greater than the left at L5-S1 and sacroiliac regions. On MRI scan he does have L4-5 and L5-S1 mild herniated discs with protrusion against the right S1 nerve root. He has L4-5 mild spinal canal stenosis.
> 2. He does have some problems with insomnia.

(Tr. 220). On August 14, 2008, an abdominal ultrasound revealed probable fatty infiltration of the liver, and the gallbladder was normal in appearance. (Tr. 229).

On February 9, 2010, Plaintiff presented to Dr. Michael S. Wolfe, at Cooper Clinic, complaining of left arm pain, back pain, and left ear pain. (Tr. 302). He was assessed as having chronic back pain, leg pain, and left elbow pain. (Tr. 302). X-rays of Plaintiff's left elbow revealed no bony abnormality. (Tr. 305). X-rays of Plaintiff's lumbar spine was negative. (Tr. 305). An MRI of Plaintiff's lumbar on February 15, 2010, revealed central disc bulging or mild

central disc protrusion producing mild canal stenosis at the L4-5 level. It also revealed mild central disc bulging or protrusion, borderline canal stenosis at L5-S1, and mild bilateral facet arthropathy[3] suspected at L4-5 and L5-S1 levels. (Tr. 232).

Plaintiff presented himself again to Dr. Wolfe on February 22, 2010, complaining of low back pain, which was reported as moderate. (Tr. 299). Dr. Wolfe reported that both lower extremities revealed intact motor and sensory function with good pulses. Plaintiff had full range of motion of both hips with good stability, good strength and good alignment. (Tr. 299). Plaintiff had "negative straight leg raise, negative FABERE, negative Babinski." (Tr. 299). There were no abdominal bruits or masses, his reflexes were full and symmetric, and he had a trigger point on the right at L5-S1. (Tr. 299). Although radiographs did reveal some very minimal degenerative changes in the lower lumbar spine that was mainly some disc space narrowing at L5-S1, and the MRI showed some central disc bulging and some mild canal stenosis, there was no evidence of any nerve root compression. (Tr. 299). Dr. Wolfe felt that most of Plaintiff's problem appeared to be mechanical. (Tr. 299).

From March, 2010 through May, 2010, Plaintiff participated in physical therapy, with minimal results. (Tr. 327-341).

On March 24, 2010, a Physical RFC Assessment was completed by non-examining physician Dr. Jerry Mann, who found that Plaintiff could perform medium work with certain limitations. (Tr. 315-322).

On July 9, 2010, a Medical Source Statement- Physical- was completed by Dr. Luc Balis. (Tr. 343-344). Dr. Balis found Plaintiff could frequently lift and/or carry less than 10 lbs;

---

[3]Arthropathy - Any disease affecting a joint. Id. at 161.

occasionally lift and/or carry less than 10 lbs; stand and/or walk a total of 1 hour and continuously for less than 1 hour; sit a total of 1 hour and continuously less than 1 hour, and was "limited" in his ability to push and/or pull. (Tr. 343).

Plaintiff again saw Dr. Wolfe on August 9, 2010. (Tr. 346). Dr. Wolfe made findings consistent with lumbar syndrome. Dr. Wolfe further found that both lower extremities revealed intact motor and sensory function, that he had full range of motion of both hips, with the exception of a slightly diminished range of motion of the left hip, with tenderness over the greater trochanter.[4] (Tr. 346). Dr. Wolfe also found that Plaintiff had a trigger point of left L5-S1. (Tr. 346). He further noted that radiographs of the pelvis revealed some degenerative changes of the hip. Dr. Wolfe gave his impression as:

1. Lumbar syndrome
2. DJD hip.

(Tr. 346). Also on August 9, 2010, a radiology report indicated a negative pelvis and left hip series. (Tr. 348).

On September 9, 2010, Plaintiff presented himself to Dr. Wolfe complaining of low back pain. (Tr. 350). His pain was reported as moderate, and both lower extremities revealed intact motor and sensory function. (Tr. 350). He had full range of motion of both hips, good alignment, good strength, and good stability. (Tr. 350). He had negative straight leg raise, and had trigger point over the greater trochanter, and also the subgluteal burse in the left hip. There was also a trigger point on the left L5-S1. (Tr. 350). Dr. Wolfe concluded that most of

---

[4]Greater Trochanter - A strong process at the proximal and lateral part of the shaft of the femur, overhanging the root of the neck; it gives attachment to the gluteus medius and minimus, piriformis, obturator internus and externus, and gemellis muscles. Id. at 2035.

Plaintiff's problems appeared to be mechanical and that there could be a radicular component to his pain. Dr. Wolfe noted that Plaintiff did not have insurance, and that they had talked about the cost of treatments and studies. (Tr. 350). Dr. Wolfe wanted to get an "LESI", to see if there was a significant radicular component to the pain. (Tr. 350).

On May 5, 2011, subsequent to the hearing before the ALJ, Dr. Balis reported that Plaintiff suffered from insomnia and depression. (Tr. 386). Subsequent to the ALJ's unfavorable decision dated May 16, 2011, Plaintiff saw Dr. Balis on June 6, 2011, and was assessed with depression and low back pain. (Tr. 361). Dr. Balis saw Plaintiff again on June 14, 2011, and reported Plaintiff was having worsening low back pain. (Tr. 363).

On June 17, 2011, Plaintiff presented himself to St. Edward Mercy Medical Center, complaining that he was "throwing up." (Tr. 369). Tests were performed and the assessment was:

1. Gastrointestinal bleed, probably Mallory Weiss[5] in nature
2. Chronic low back pain
3. Nausea and vomiting, slowly resolving.

(Tr. 379). An upper endoscopy revealed a small hiatal hernia, prolapse gastropathy[6] related to retching/vomiting, and multiple linear erosions (distal body) likely related to nonsteroidal anti-inflammatory drug use. (Tr. 382). Plaintiff was discharged from the hospital on June 21, 2011, and diagnosed with upper GI (gastrointestinal) bleed, chronic lower back pain, and "polythemia." (Tr. 383).

A CT of Plaintiff's lumbar spine post myelogram, post contrast done on July 18, 2011,

---

[5]Mallory Weiss syndrome - Upper gastrointestinal hemorrhage resulting from a laceration in the mucosa at the gastroesophageal junction, usually induced by retching or vomiting. Id. at 1904.

[6]Gastropathy - Any disease of the stomach. Id. at 793.

-7-

revealed a large left L5-S1 disc herniation with extruded fragment, severe thecal sac compression, more on the left. Moderate left paracentral disc protrusion at L4-5 and posterior element hypoertropy with mild to moderate canal stenosis at L4-5 as well. (Tr. 390). The final diagnosis was back pain and lumbar stenosis. (Tr. 390). A lumbar myelogram done on August 1, 2011, revealed probable disc protrusions L4-5 and L5-S1 levels with diminished filling of S1 nerve roots bilaterally. The final diagnosis was back pain and lumbar stenosis. (Tr. 392).

### III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v.

-8-

Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**IV.    Discussion:**

Plaintiff contends on appeal that: 1) the ALJ erred in assessing Plaintiff's severe impairment as "degenerative disc disease of the lumbar spine;" 2) that the ALJ erroneously gave no weight to Dr. Luc Balis' functional limitations, but gave great weight to Dr. Stephanie Frizbie's opinion; and 3) that the ALJ erred by not addressing the fact that Plaintiff was functioning at a 6th grade level. (Doc. 4).

AO72A
(Rev. 8/82)

    A.    **Severe Impairment:**

Plaintiff argues that the annular tears found in the February 2010 MRI were erroneously viewed as "mild" and "minimal," and that it is possible that the symptoms described by Plaintiff in his testimony would be consistent with pain associated with the annular tears.

The impression contained in the report of the Lumbar Spine MRI is as follows:

> Central disk bulging or mild central disk protrusion producing mild canal stenosis at the L4-5 level. Mild central disk bulging or protrusion, borderline canal stenosis at L5-S1. Mild bilateral facet arthropathy suspected L4-5 and L5-S1 levels.

(Tr. 232). It is in the reading of the Lumbar Spine MRI where the reference to an annular tear appears:

> At the L4-5 level, broad central disk bulging or protrusion, probably an associated annular tear, with some ligamentum flavum hypertrophy. The A-P dimension of the thecal sac is reduced to 9 mm. Representing mild canal stenosis.
>
> At the L5-S1 level, there is also mild central disk bulging, possibly a midline annular tear, A-P dimension of the spinal canal 10 mm. Which is borderline. Mild bilateral facet arthropathy at both L4-5 and L5-S1 levels.

(Tr. 232). A reading of the referenced language leads the Court to conclude that although reference was made to "probable" or "possible" annular tears, the conclusion was "mild canal stenosis" or "mild bilateral facet arthropathy." Therefore, the Court believes Plaintiff's argument on this issue is without merit. Even the CT Lumbar Spine Post Myelogram, Post Contrast and Lumbar Myelogram, performed on July 18, 2011, and August 1, 2011 (Tr. 390, 392-393), indicated "mild to moderate canal stenosis," or "probable disc protrusions L4-5 and

L5-S1 levels with diminished filling of S1 nerve roots bilaterally." (Tr. 390, 392).

Furthermore, on September 9, 2010, Dr. Wolfe reported that Plaintiff's back pain was moderate, that his lower extremities revealed intact motor and sensory function, good pulses, full range of motion of both hips, good alignment, good strength, and good stability. He noted a trigger point over the greater trochanter, and the subgluteal burse in the left hip. In an August 9, 2010 record, Dr. Wolfe gave the impression as lumbar syndrome and degenerative joint disease of the hip. (Tr. 346).

Based upon the evidence as a whole, the Court believes there is substantial evidence to support the ALJ's conclusion that Plaintiff's severe impairment was degenerative disk disease of the lumbar spine.

    **B.**    **RFC Findings:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own description of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "The ALJ is [also] required to set forth specifically a claimant's limitations and to

determine how those limitations affect his RFC." Id.

The ALJ gave no weight to Dr. Balis' assessment and gave Dr. Frisbie's assessment weight to the extent that it was consistent with the RFC. (Tr. 17). "A treating source's opinion is to be given controlling weight where it is supported by acceptable clinical and laboratory diagnostic techniques and where it is not inconsistent with other substantial evidence in the record." Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir.2003), paraphrasing 20 C.F.R. § 404.1527(d)(2). When a treating source's opinion is not controlling, it is weighed by the same factors as any other medical opinion: the examining relationship, the treatment relationship, supporting explanations, consistency, specialization, and other factors. Lehnartz v. Barnhart, 142 Fed.Appx. 939, 940, 2005 WL 1767944, 1 (8th Cir. 2005).

The ALJ noted that Dr. Balis did not indicate the nature of his treating relationship with Plaintiff and that Plaintiff's treatment records showed only one visit with Dr. Balis on February 15, 2010, prior to the completion of Dr. Balis' Medical Source Statement. The ALJ therefore appropriately questioned Dr. Balis' judgment concerning Plaintiff's subjective complaints. (Tr. 16-17). The ALJ further noted that although Dr. Balis was correct in that Plaintiff's lumbar spine MRI was abnormal, it was difficult to equate the relatively insignificant findings resulting from the MRI with the extreme limitations Dr. Balis asserted on behalf of the Plaintiff. (Tr. 17). The ALJ further concluded that the physical examination findings found within the medical evidence of record simply was "not consistent with extreme limitations Dr. Balis attributes to the claimant." (Tr. 17).

With respect to Dr. Frisbie's assessment, the ALJ noted that it was over two years old. (Tr. 17). However, the ALJ concluded that Dr. Frisbie's assessment was substantially consistent

with those found in more recent records, and gave it weight to the extent that it was consistent with the RFC.

In addition, the Appeals Council considered additional evidence that was not before the ALJ, and when the Appeals Council has considered material new evidence and nonetheless declined review, the ALJ's decision becomes the final action of the Commissioner. The Court then has no jurisdiction to review the Appeals Council's action because it is a nonfinal agency action. See Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir.1992). At this point, the Court's task is only to decide whether the ALJ's decision is supported by substantial evidence in the record as a whole, including the new evidence made part of the record by the Appeals Council that was not before the ALJ. As the United States Court of Appeals for the Eighth Circuit has noted, "this [is] a peculiar task for a reviewing court." Riley v. Shalala, 18 F.3d 619, 622 (8th Cir.1994). However, once it is clear that the Appeals Council considered the new evidence, then the Court must factor in the evidence and determine whether the ALJ's decision is still supported by substantial evidence. This requires the Court to speculate on how the ALJ would have weighed the newly submitted evidence had it been available at the initial hearing. Flynn v. Chater, 107 F.3d 617, 621 (8th Cir.1997). Thus, the Court has endeavored to perform this function with respect to the newly submitted evidence, and after considering such, the Court is of the opinion that the additional evidence would not have changed the ALJ's decision.

A review of the medical records referenced in this report indicates that Dr. Frisbie's assessment is consistent with them, and the Court believes there is substantial evidence to support the weight given by the ALJ to the physician's assessments.

### C. Plaintiff's Educational Functioning Level:

Plaintiff argues that based upon certain testing, Plaintiff functioned at a sixth grade level. The ALJ addressed Plaintiff's contention that he had a learning disability, and stated as follows:

> Education records show that the claimant received several below average and occasional failing grades in junior high school. However, the claimant's senior high school grades were generally average to above average with a few exceptions. Moreover, there is nothing in these records showing that the claimant was diagnosed with a learning disability. (Exhibit B1E). Furthermore, the claimant worked after graduating from high school and there is no credible evidence that the claimant's ability to learn has since deteriorated.

(Tr. 16). In addition, as noted by the ALJ, the RFC assessment limited Plaintiff to unskilled work, which accommodates Plaintiff's alleged learning disability. As noted by Defendant, unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." See 20 C.F.R. §§ 404.1568(a), 416.968(a); SSR 83-10, 1983 WL 31251 at *7.

Based upon the foregoing, the Court believes the ALJ's RFC findings take into consideration Plaintiff's alleged learning disability.

### V. Conclusion:

Based upon the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of the undersigned's report and recommendation in which to file written objections pursuant to 28 U.S.C. §636 (b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely**

AO72A
(Rev. 8/82)

**and specific to trigger de novo review by the district court.**

DATED this 7th day of January, 2013.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)